The first three cases, 0271359, Tovar, Landon v. Ashcroft, also 0272687, Godinez-Rodriguez v. Ashcroft, and 0271480, De Reyes v. Ashcroft. These cases are submitted on the briefs at this time. The first case to be argued then is 0355037, Portillo v. Johnson. Each side has ten minutes. Good morning. Good morning. May it please the Court, my name is Pamela Kelly, and I represent Plaintiff and Appellant in this matter, Juan Portillo. This case is about excruciating, debilitating pain suffered by pro se Plaintiff, Juan Portillo, while incarcerated at Cal State Prison, Los Angeles. In 1998, lab tests revealed that Portillo suffered from kidney stones, one of the most painful medical conditions that a person can experience. Portillo complained repeatedly of this pain in writing and orally to prison medical staff. Defendants Robert Johnson and Jose DeCastro are two prison physicians who inexplicably denied, delayed, and interfered with Portillo's treatment, despite knowing that they were his only chance to obtain adequate treatment at the prison. Why is it the problem with DeCastro negligence rather than intentional indifference? Well, Your Honor, initially, Dr. DeCastro misdiagnosed the pain as coming from surgical scars and not kidney stones. That on its own may have just been negligence, but Dr. DeCastro discovered the misdiagnosis and did nothing to make sure that Portillo received the treatment he needed. How do you, where is that in the complaint that he discovered the misdiagnosis? Oh, the, Dr. Johnson and Mr. Portillo communicated with one another, and there's a note on the top. Dr. Johnson, I'm talking about Dr. DeCastro. Yes, but what happened was, because Johnson is the administrator, somehow he became the go-between between the patient and Dr. DeCastro, and the attachments reflect that it appears that Johnson and DeCastro communicated. And DeCastro said, I looked at the x-rays, and he did have kidney stones, but he passed at least one kidney stone. So DeCastro appears to have known within a few days of the initial visit that there were indeed kidney stones and they were misdiagnosed. Did you give him a record citation to the evidence or to the allegation? But he didn't do anything to make sure he got treated. Yes, Your Honor. There is a letter that Mr. Portillo wrote complaining about the misdiagnosis. That's tab 59, sorry, page 21. So let's look at that. And across the top of page 21, there's a handwritten note, and that is from Dr. Johnson. And it says, per DeCastro, he reviewed your x-rays, and it appears you have already passed your stone. No further referral or study is indicated. Now, in the text of the complaint, it's not entirely clear, but it appears that this is what Dr. Johnson verbally told Mr. Portillo. Well, what if – is your position that Johnson told that to DeCastro? To Portillo. Okay. So, again, what brings DeCastro in for more than a misdiagnosis that might be negligence? It appears from the record that it was very rare for an inmate to see any doctor at all, let alone a specialist. It took two years to get in to see anyone. So Dr. DeCastro realizes he made a mistake. Well, wait a second. Okay. But he's told, I thought. You said he's told that the kidney stones passed. Is that right? That's – That's their doctor. It appears that DeCastro himself went back and looked at the x-rays he ordered when they came in. And he tells Dr. Johnson that they passed. However, Your Honor, I will point out that the x-rays indicated that he still had kidney stones. There was at least one present stone. So even the second time around, that's a second mistake. But why – but, okay, so it's a second mistake. Let's say it's a fifth mistake. Because he sat by and didn't make sure that he got to him. Wait a minute. Let him finish the question. It's negligence. Mm-hmm. It's not an Eighth Amendment problem. But sitting by and not making sure that Mr. Portillo received the treatment that he needed once he knew he'd made a mistake, that's deliberate indifference, Your Honor. That's the argument. He didn't do anything for him. This was his one chance to get treatment, and he didn't. And DeCastro knew he made a mistake and didn't fix it. I may be dense, but I haven't caught quite your citation of how DeCastro learned that he had misdiagnosed, as post-operative adhesions, the source of the pain, which later turned out to be renal stones. Oh, I apologize, Your Honor. I may not have answered your question properly the first time. This could be the citation. For the first diagnosis or the second, Your Honor? For the second. How did DeCastro learn that he had misdiagnosed adhesions for renal calculus? It appears because he looked at the x-rays that he had ordered. I hear you say that. He looked at the x-ray. Well – That's a conclusion of an advocate. What I want is a citation of a record. Tab 59, page 21. Tab 59, page 21. Page 21. There's a handwritten notation across the top, and it describes that Dr. DeCastro went back and looked at the x-rays and determined that he did have kidney stones, but they had passed. Okay. But if he thought they had passed, again, isn't that just negligence? Not if he didn't make sure that – he didn't, in our view, in reading this record, behave the way a doctor should behave. If you make a mistake, especially with a vulnerable patient like Mr. Portillo, you need to make sure that he gets treated properly. He sent him away with the wrong diagnosis, and then never made sure that he got the treatment that he needed. Do you have any legal authority for this make-sure argument? Well, Your Honor – Is that an Eighth Amendment? Standing by – well, the legal standard is knowing of and disregarding an excessive risk to inmate health and safety. Where this standard came from, I think, was the idea that initially these Eighth Amendment problems were intentional wrongs. And then that standard was just a little too tight, and courts expanded it to permit deliberate indifference, where somebody really just knows there's a problem and looks in the other direction. But for doctors – oh, I apologize. But if they don't know there's a problem because they make a mistake, even if they And I have a similar problem for Dr. Johnson, and maybe you could address that. Okay, Johnson is not a one-time person or a two-time person. He's throughout the train of these events, so you have a stronger case against him. But still, if at the point he refers the case to a specialist, who's DiCastro, and then DiCastro makes a mistake, and it looks like he just relied on DiCastro, why can't a supervising medical officer rely on a specialist? In other words, why isn't that just in the negligence realm when Johnson blows off the further issue by relying on DiCastro? Within a week of the initial misdiagnosis, a week or two weeks, Johnson also became aware that a mistake was made. And he appears to be the gatekeeper for any kind of specialized treatment that Portillo received. So Dr. Johnson is not just sitting back and relying on Dr. DiCastro and not exercising his own judgment. He was exercising his own judgment. It was within his power to immediately send him to the urologist that he should have seen years ago and didn't see. But that took several more months, Your Honor. Is it an Eighth Amendment violation to send him to a specialist surgeon rather than a urologist? I mean, right there, is that your cruel and unusual punishment case? No. It's the extra layer of continuing to allow him to suffer for many more months when they immediately knew that the wrong diagnosis was made. They knew it should have been a kidney stone. Actually, for years, his medical files had indicated kidney stones, and he hadn't gotten treatment even for two years leading up to this. And I think the pain is extremely important in this case. It wasn't something minor. He was in excruciating pain for years. And so I think when a doctor sits by, knowing how risky kidney stones are and knowing what kind of pain he was under, it is deliberate indifference to send him back to his cell and not give him any treatment. Do you want to save a minute for rebuttal? Yes, please. Thank you very much. Thank you. Good morning, Your Honor. May it please the Court, my name is John Bassan, and I represent Dr. Johnson and Dr. DiCastro. There's three points, issues, that I would like to emphasize First off, Dr. DiCastro and Dr. Johnson didn't do anything wrong. There was no misdiagnosis. I would refer the Court to Defendant's Supplemental Exhibit 39. And in looking at that, the Court will see that that's an administrative appeal. And I read from that administrative appeal, and this is what Portillo says at that time, that he is presenting himself with extreme pain to his stomach, his right side. He's not presenting himself for kidneys. He's presenting himself for a pain in his stomach. And that's the issue that Dr. DiCastro addresses. And I would also refer the Court to the claim of preoperative adhesions. What evidence is there that there was an operation? That would be Defendant's Supplemental Exhibit 30. And in there, you'll see a note where symptoms, it's right flank pain, radiating, persistent, observation, tender right side. And there's a torso, and then there's an X. There's also a stab wound going down the chest. There's a number of surgeries this man's had. My question was, where is there some evidence that he had a surgery, not a stab wound, but a surgery, such that would cause adhesions in the area of his pain? That would be the exhibit that I referenced. And in addition to that, there's another reference to it, and that would be, again, the administrative appeal. And that would be 42 when Mr. Portillo goes to the 42 or page 42? I'm sorry, this would be Defendant's Supplemental Exhibit 42, page 42. And it's still part of the administrative appeal. And in there, he indicates, I believe, that he had a surgery approximately two years ago that would be the cause of the pain in the right stomach. I would also like to indicate for the Court that the reason the kidneys are not at issue with regards to Dr. Castro or Dr. Johnson in the administrative appeal, if you look at the x-rays, it has to do with the left kidney. We know that there's kidneys both on the right side and the left. We're talking about, and it's not, there's no blockage whatsoever. And that's noted in the x-rays. It's merely a calcification. The first one, 98, you'll see that it's an 8 millimeter. The one days after the administrative appeal is 4 millimeters. And I think the only reasonable inference from that would be that it's the 8 millimeter past and a new one is creating. Why wouldn't Dr. Johnson, as a supervising or chief medical officer, get a urologist to look at this prisoner? In this particular case, Dr. DeCastro is a general surgeon. And I believe what the case is now being presented is that years and years after he leaves, he eventually has a surgery to remove a kidney stone from the right kidney. So if we're talking about the removal of a kidney or, we would send you to a general surgeon. Well, wasn't, didn't Dr. Adegala diagnose a kidney stone early on? And then that, of course, was part of the administrative appeal. At that time, particularly The Judge Gould's question is why, if Judge Adegala says this man has a kidney stone, why didn't they send him to a urologist right away? Because it would be a general surgeon who would do the surgery. Says who? Well, that's who did the surgery back at Centinella years, years later. Well, I mean, talking about what's in the complaint, I mean, my impression was that Dr. Adegala wanted him to see a urologist and have an IVP done. He did have an IVP. And in addition to that, that's what, that is what Portillo says, but that's not what's, that's not what the, the administrative appeal was about. That's not my question. My question is why didn't he get to see a urologist when Adegala diagnosed a kidney stone? I don't, Your Honor, I think that it was believed that he had kidney stones. The problem that was being addressed was the right stomach pain. And for that, he saw a general surgeon. Are you still contending that a kidney stone is not a serious medical condition? Yes, Your Honor. And I would also refer the Court to Plaintiff's Exhibit 53. This was before the lower court, I believe on the second motion to dismiss. And this is a regional medical center from El Centro, California. And they indicate, and this was, this was before the lower court, that kidney stones can have home treatment and that they normally pass in three to four days. I think that that shows that as long as a kidney stone is not a blockage, and I would also refer the Court to the x-rays, there was never any blockage and there was never any serious medical condition. Well, this is not summary judgment. This is a complaint. I mean, he's alleging he's in excruciating pain and can't get treatment. Yes, Your Honor. I mean, with all due respect, I mean, you're not a radiologist, I don't think, are you? No, Your Honor. But these are, but obviously all the documents attached to the complaint would be appropriate to look at in terms of a motion to dismiss. And they would trump anything said that's contrary. And the documents themselves show that it was not a serious condition. Now, is there anything in the record that says whether a surgeon is an appropriate medical expertise to see someone who may have a kidney stone problem? No. Is that common or is that not common? Your Honor, it's absent from the record whether that's appropriate or not. Clearly, Dr. Johnson, that's who we refer to. If there's a disagreement, I would say that that falls under Sanchez v. Vald, and it's just a difference of a medical opinion. Is there anything in the record that suggests that it's inappropriate to send a surgeon to look at someone who may have a kidney stone problem? No, Your Honor. I believe that the record is silent on that. Let's assume there are a series of mistakes. I realize that's in contest or maybe a question whether that was alleged. But if there are a series of mistakes, and each of them would be negligence in a civil action in the sense of doing something outside a normal standard of care, at what point does that ripen into deliberate indifference that creates a constitutional issue? I would say if there was absolutely no indication from the record that what the doctors did would be appropriate, that perhaps that would ripen. But in this particular case, the documents themselves show that these doctors didn't do anything wrong. But I would say, to answer the Court's question directly, if there was a situation where their treatment was so outside the norm that there could be only one conclusion, and that is deliberate indifference, I would say that that would be a situation that perhaps would ripen into deliberate indifference. May I ask you a procedural question? This is an appeal from a 12b-6 dismissal, right? So all we're looking at really is the complaint, or was this converted into a motion of summary judgment by the trial court? It is purely a motion to dismiss, and I would address further the Court's question to the case of Durning v. First Boston Corporation, which was cited to you in my papers. And in that particular situation, when you have documents attached, as we do here, and the documents indicate something contrary to what's being alleged, the documents then would be what the complaint that is contrary to those documents should be ignored. Are the documents appended to the complaint as an exhibit? Yes, Your Honor. There is a vast number of documents attached, all the documents I've referred to so far. And I would also emphasize again for the Court to look very closely at the administrative appeal, because in that you will see that when he came to Dr. Durning's office, he had stomach problems in his right side, and you will see that the X-rays that's now being referred to are for a kidney stone in the left kidney. Question. Is the record of the administrative hearing attached as an exhibit to the complaint? Yes, Your Honor. And it is, as I think I mentioned, I believe that it is. It's also, it's both attached by the appellant and appellees. And in the supplemental brief by the defendant's appellees, it starts at page 39. Well, the appellees didn't file a complaint. No, but I'm referring to the excerpts of record and the Second Amendment complaint of plaintiff. Oh, I see. Just to clarify, what I understood Judge Bail asking was, was that administrative transcript an attachment to the plaintiff's complaint? Yes. It's attached in the Second Amendment complaint. And the Court can see that both from the excerpts of record of appellant and appellee. And since I'm almost out of time, I would like to You're out of time, but if you want to finish your thoughts, you may. Oh, thank you. I just want to quickly address Shaw v. Murphy with regards to whether there was adequate access to courts. And then with regards to qualified immunity, obviously, Stassier-Katz, and then further qualified by this Court in terms of fair warning, Sorano v. Francis, based on Hutchinson, these doctors would not have had fair warning that any of their conduct, in particular because there's evidence that they acted appropriately, would have been outside Constitutional law. Thank you very much. Oh, excuse me, Judge Bail. Go ahead. Let Ms. Kelly bring up an issue that you haven't had a chance to talk about. What's your position regarding the claim that he, that Mr. Portillo was denied his rights by not being able to contact Mr. Marcus Blevin? That would be Shaw v. Murphy. And in that case, that was an issue of First Amendment whether prisoners have rights that fall outside of Turner v. Safley. And I believe the lower court acted appropriately in determining that that correspondence was not needed. Okay. Thank you. Thank you, sir. Thank you. Ms. Kelly? I've got about a minute left. Just very briefly, a couple of quick things. One, de Castro was Mr. Portillo's doctor. And I think to try to somehow say he wasn't Mr. Portillo's doctor is passing the buck in a way that does meet the deliberate indifference standard. And secondly, Dr. de Castro may well have known that there were stones in the X-ray that he looked at. We don't know if he made a second mistake or if he saw that they were there and simply didn't pay any attention to them. So it's not clear. We were talking earlier about were there just two mistakes. Not necessarily. In fact, he may have overlooked them deliberately the second time. Your citation record indicates at tab 59, page 21, that de Castro concluded that the stones had been passed and no further treatment was needed. Right. If, indeed, the stones had been passed, no further treatment was needed. Isn't that correct? But the X-ray shows that there's at least one stone that's still in his body at the time it was taken. Right. Well, we have a lab report, Your Honor. I don't say that. Where's the deliberate indifference in misreading? That's the whole point. It may not have been a misreading. He already knew he made a mistake once. He may have just rather to sweep it under the rug and send it back to his cell. Is that what you alleged in your complaint that he did? It's a possible inference, Your Honor. It's a possible inference. All right. Thank you very much. Thank you very much. Ms. Kelly, Mr. Bazan, the case just argued is submitted. Ms. Kelly, I understand you were appointed on a pro bono basis for this case. We very much appreciate you taking the case into the conscientious attention you've given to it. Thank you. The next matter is 0256959, Sager v. Pacific Life Insurance. Each side has 20 minutes. Thank you very much.
judges: Silverman, Gould, Bea